```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

|                                      |   |                       |
|--------------------------------------|---|-----------------------|
| SARAH FAMA,                          : |   |                       |
|                                      : |   | Civil Action No.      |
|            Plaintiff,                : |   | 10-cv-2057 (NLH)(KMW) |
|                                      : |   |                       |
|      v.                              : |   | **OPINION**           |
|                                      : |   |                       |
| DESIGN ASSISTANCE CORPORATION,       : |   |                       |
| et al.,                              : |   |                       |
|                                      : |   |                       |
|            Defendants.               : |   |                       |

**APPEARANCES**:

William B. Hildebrand, Esquire
Law Offices of William B. Hildebrand, L.L.C.
1040 Kings Highway North
Suite 601
Cherry Hill, N.J. 08034
*Attorney for Plaintiff*

Cheryl L. Cooper, Esquire
Oandasan & Cooper, P.C.
28 East Avenue
P.O. Box 326
Woodstown, N.J. 08098
*Attorney for Defendants*

**HILLMAN, District Judge**

    Plaintiff, Sarah Fama, brought suit against Defendants, Design Assistance Corporation, the Plan Administrator for the Design Assistance Corporation AmeriHealth Group Medical Plan, and the Design Assistance Corporation AmeriHealth Group Medical Plan (collectively, "Defendants"), alleging that Defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29

U.S.C. § 1001 *et seq.*, and, likewise, the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1161 *et seq.*, by not timely notifying Fama of her right to elect COBRA continuation coverage. Fama moves for summary judgment. Defendants cross-move for summary judgment.

For the following reasons, Fama's Motion for Summary Judgment is granted in part. Further, Defendants' Cross-motion for Summary Judgment is denied in part. The parties are granted leave to submit supplemental briefs with respect to the remaining issues highlighted by this Opinion and as further explained *infra*.

**I.   JURISDICTION**

This Court has jurisdiction over Plaintiff's federal claim pursuant to 28 U.S.C. § 1331.

**II.   BACKGROUND**

According to Fama's complaint, Design Assistance Corporation ("DAC") "is in the business of designing and manufacturing training aides, mockups, simulators, cutaways and demonstration equipment relating to industrial maintenance skills." (Compl., ¶ 5). Glenn Woerner, DAC's President and sole board member, describes DAC as "a small New Jersey Corporation in the business of designing three dimensional training aids for other companies." (Def. Cross-mot., Woerner Aff.). In or around April 2008, Fama began working as an administrative/personal assistant

2

for DAC.  Within several months, Fama became a participant and beneficiary in a group health insurance plan, the AmeriHealth Group Medical Plan.  On September 30, 2008, however, Fama's employment with DAC terminated.[1]

Despite her termination in September 2008, Fama did not receive any notice of her right to continue her insurance coverage under COBRA.  In a letter dated May 28, 2009, Fama's former counsel sent a letter to DAC informing the company of its failure to provide COBRA notice, and requesting that notice be sent and Fama "be made whole so as to avoid any gaps in her benefit coverage."  (Pl. Mot., Hildebrand's Aff., Exh. F). Subsequently, in a letter dated June 9, 2009, Woerner explained that Fama was not entitled to receive any information concerning her insurance coverage because, *inter alia*, she abandoned her job and thus was terminated for cause.  Moreover, Woerner stated that despite DAC's efforts to cancel Fama's insurance coverage on October 15, 2008, "due to an administrative error, our faxed notice was not acknowledged until March 2009 and the cancellation was made effective January 1, 2009."  (Pl. Mot., Fama's Aff., Exh. A).

Nevertheless, in a letter dated June 30, 2009, Kelly Daroshefski, DAC's controller and the person within DAC who often

---

[1] Fama claims that she resigned due to a hostile work environment.  Defendants claim that Fama voluntarily walked off the job and never returned or called.

3

handles employee insurance, requested Cherry Hill Benefits, the company that had assisted DAC with its insurance account, to "reinstate the medical coverage for Sarah Fama . . . retroactively, 1/1/09 in order to have no lapse in coverage." (Def. Cross-mot., Daroshefski Aff., Exh. B).  Fama's health insurance benefits eventually were reinstated retroactively to January 1, 2009.[2]  Then, on September 3, 2009, Fama received notification from DAC of her right to continue her medical coverage under COBRA.  In between the time of her termination and receipt of the COBRA notice, Fama incurred medical expenses in the amount of $656.22 that her medical plan would have covered.  In addition, Fama applied for treatment as an "assistance eligible individual" pursuant to the American Recovery and Reinvestment Act of 2009 ("ARRA").  DAC denied her request, but the United States Department of Labor determined that she was eligible for a premium reduction to the cost of her COBRA benefits under the ARRA.

In April 2010, Fama filed suit against Defendants, alleging that they violated ERISA by failing to timely notify her of the

---

[2] The impetus for retroactively reinstating Fama's insurance coverage is not entirely clear.  Fama suspects that the threat of litigation impelled Defendants' actions, specifically their subsequent issuance of proper notification.  Defendants suggest that an unintentional mistake occurred and they attempted to correct it.  In particular, Defendants mention that Daroshefski did not realize that DAC, and not Cherry Hill Benefits, was the plan administrator and responsible for providing COBRA notice.

right to elect COBRA continuation coverage.  She seeks statutory penalties, reimbursements, and attorney's fees and costs in relief.  In February 2011, Fama moved for summary judgment on her claim against Defendants.  About two months later, Defendants cross-moved for summary judgment against Fama's claim.

## III. DISCUSSION

### A. Standard for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56.

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino

v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**B.   COBRA Notice**

Plaintiff argues that she is entitled to statutory penalties under COBRA because Defendants did not provide statutorily prescribed notice within forty-four days of the qualifying event -- the termination of her employment in September 2008.  In addition, Fama asserts that even if Defendants' failure to provide notice constituted an honest mistake, instead of a malicious, bad faith act, she still is entitled to compensation. She also seeks reimbursement for her medical expenses and attorney's fees and costs.

6

Defendants contend that, notwithstanding one brief exception, Fama had her employee insurance benefits from the time she resigned until her receipt of the appropriate COBRA notice. Though her insurance lapsed briefly in March 2009, Defendants point out that the coverage then was reinstated retroactively and Fama remained eligible for her benefits at no cost to her.  Thus, by Defendants' assessment, the qualifying event mandating notice within forty-four days did not occur until her benefits ceased, and she received actual notice on September 3, 2009.  For those reasons, Defendants do not believe that Fama is entitled to statutory penalties, reimbursement, or attorney's fees or costs.

Pursuant to COBRA, "[t]he plan sponsor of each group health plan shall provide . . . that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan."  29 U.S.C. § 1161(a).  An employer must notify the administrator of the group health care plan of a qualifying event within thirty days of that event's occurrence.  Id. § 1166(a)(2).  Within fourteen days thereafter, the administrator then must inform the covered employee of the qualifying event, and thus the option for continued coverage.  Id. § 1166(a)(4), (c).  Accordingly, when an employer also is a plan administrator, the employer must provide the requisite notice to the employee within forty-four days of

7

the qualifying event. 29 C.F.R. § 2590-606.4. Should an employer fail to furnish the requisite COBRA notification, ERISA allows for a statutory penalty of up to $100 a day. 29 U.S.C. § 1132(c)(1); see also 29 C.F.R. § 2575.502c-1 (increasing civil penalty to a maximum of $110 a day).

Germane to the requirement of COBRA notice -- and, if appropriate, the imposition of a statutory penalty -- is the existence and timing of the "qualifying event." A "qualifying event," as defined by COBRA, is a specifically enumerated event "which, but for the continuation coverage required under [COBRA], would result in the loss of coverage of a qualified beneficiary." Id. § 1163. Among those particular, enumerated events that constitutes a "qualifying event" is the termination of the covered employee from his or her employment. Id. § 1163(2). The parties seem to agree that Fama's employment terminated in September 2008. However, unbeknownst to her, she continued to receive coverage uninterrupted for several more months until her insurance was terminated in March 2009, retroactively effective January 1, 2009. Only after Fama's former counsel contacted DAC were her insurance benefits reinstated retroactively.

Undisputed then are the following facts: (1) Fama's employment terminated in September 2008; (2) at some point thereafter, Fama's insurance coverage lapsed; and (3) Fama did not receive COBRA notice until September 3, 2009. Based on those

8

undisputed facts, the Court finds that Defendants violated the COBRA notice requirement.

Accordingly, under the statutory scheme, a court has discretion to impose statutory penalties upon an entity who violates the notice provisions of COBRA. See 29 U.S.C. § 1132(c)(1); see also Sluka v. Landau Uniforms, Inc., 383 F. Supp. 2d 649, 658 (D.N.J. 2005) ("A district court has considerable discretion to impose a penalty on a company that fails to comply with the notice provisions of ERISA or the COBRA amendments."); Boyadjian v. CIGNA Cos., 973 F. Supp. 500, 505 (D.N.J. 1997) ("Whether a district court awards a plaintiff monetary damages under 29 U.S.C. § 1132(c)(1) is a matter of discretion."). Among the relevant factors for deciding whether to impose a statutory penalty, and the size of the penalty, are the employer-administrator's good faith or lack thereof, any prejudicial harm suffered by the plaintiff, the length of the delay, or the degree or magnitude of the employer-administrator's desultory actions. See Boyadjian, 973 F. Supp. at 505; see also Kane v. United Indep. Union Welfare Fund, 1998 U.S. Dist. LEXIS 1965, at *15 (E.D. Pa. Feb. 23, 1998). Notwithstanding a court's discretion, to warrant the statutory penalty a plaintiff need not demonstrate that the failure to provide COBRA notice caused actual harm or that notice was withheld for nefarious reasons. Rather, a statutory penalty may be imposed for mere non-compliance. See

9

Emilien v. Stull Techs. Corp., 70 F. App'x 635, 645 (3d Cir. 2003) (citing Gillis v. Hoechst Celanese Corp., 4 F.3d 1137, 1148 (3d Cir. 1993)); Lloynd v. Hanover Foods Corp., 72 F. Supp. 2d 469, 479-80 (D. Del. 1999) ("The purpose of ERISA's penalty provision is to induce compliance with statutory notification requirements and to punish non-compliance."). Similarly, "a claimant need not demonstrate bad faith by the plan administrator, for the statute penalizes a *failure* to comply with a request as well as a *refusal* to comply with a request." Emilien, 70 F. App'x at 645.

Defendants' primary defense to the imposition of a statutory penalty is that even though Fama's insurance had been discontinued, ultimately it was reinstated free of cost to her. Certainly, the retroactive reinstatement is a factor to considered by the Court in exercising its discretion, but that alone does not negate the appropriateness of some penalty. Again, the statutory penalty does not simply punish intentional or willful refusal to provide notice; it also serves to induce compliance where mere negligence or mistakes otherwise deprive a covered employee from receiving the requisite notice. See, e.g., Sluka, 383 F. Supp. 2d at 659 & n.8 (imposing statutory penalty of $20 per day for failure to notify plaintiff-employee of right to elect COBRA continuation coverage even though lack of notice "appears to be an honest error" and defendant-employer "has

10

offered to make Plaintiff whole by making coverage retroactive").

Accordingly, the Court finds that a statutory penalty of $10 per day is appropriate under the circumstances of this case. Contrary to Fama's representations, the Court does not find that Defendants acted in bad faith or with malicious intent. Defendants believed that Fama abandoned her job and could be terminated for cause. In addition, DAC officials thought that Cherry Hill Benefits was the plan administrator for its group health insurance plan and would handle the notices. On this record, the Court cannot say that those two suppositions are unreasonable, or at least fabricated. The Court accepts that Defendants made an honest mistake in not issuing the COBRA notice to Fama sooner. Moreover, about a month after Fama's former counsel informed DAC of its failure to furnish COBRA notice, Daroshefski wrote to Cherry Hill Benefits requesting, and ultimately effectuating, the retroactive reinstatement of Fama's coverage to January 1, 2009. The fact that Fama's insurance was reinstated retroactively and at no cost to her exhibits a certain degree of good faith by Defendants and their willingness to remedy their mistake -- regardless of whether or not the fear of litigation may have contributed to their actions. In the end, it appears that mere ignorance or misunderstanding of the COBRA requirements and the administration of their insurance plan underlies Defendants' failure to timely provide Fama with the

11

COBRA notice.

That having been said, Defendants nevertheless failed to provide the notice when they should have.  Apart from their efforts to retroactively reinstate the coverage, Defendants seem to acknowledge as much.  Therefore, a statutory penalty shall be imposed, but for the reasons stated above, it shall be limited to $10 per day until she received the official COBRA notice, on September 3, 2010.

However, before the Court can calculate the actual amount of the statutory penalty owed by Defendants to Fama, another issue must be resolved:  At what point in this matter were Defendants obligated to provide notice?  Stated differently, starting on what day may the penalty be imposed?  Section 1163 of COBRA clearly states that the term "qualifying event" encompasses only certain scenarios, including termination of employment, that "result in the loss of coverage of a qualified beneficiary."  29 U.S.C. § 1163.  Some authority interprets that phrase and, generally, the statutory scheme to apply only when a beneficiary loses his or her insurance coverage.  In other words, the section does not apply when a beneficiary is still covered by insurance benefits other than COBRA's, regardless of whether or not the beneficiary was terminated from his or her employment.  See, e.g., Williams v. Teamsters Local Union No. 727, 2003 U.S. Dist. LEXIS 18906, at *12 (N.D. Ill. Oct. 23, 2003) (noting that "'a

termination that does not result in a loss of coverage does not constitute a qualifying event and does not trigger the notice requirements of § 1166'" (quoting Fenner v. Favorite Brands Int'l, Inc., 1998 U.S. Dist. LEXIS 7224, at *13 (N.D. Ill. May 12, 1998))); Chacosky v. Hay Group, 1991 U.S. Dist. LEXIS 1170 (E.D. Pa. Feb. 1, 1991); 26 C.F.R. § 54.4980B-4 (Internal Revenue Service regulation stating that no COBRA qualifying event occurs "if neither the covered employee nor the spouse or a dependent child of the covered employee loses coverage before the end of what would be the maximum coverage period").  On the other hand, some cases may be read to suggest that termination from employment, irrespective of insurance coverage, triggers the notice requirement under COBRA.  See, e.g., Veneziano v. Long Island Pipe Fabrication & Supply Corp., 2002 U.S. Dist. LEXIS 28555, at **9-10 (D.N.J. Apr. 10, 2002) (finding that, absent certain specifications in the health plan, COBRA's notice clock commences at date of termination rather than day that coverage ends).  In any event, both parties seem to agree on the importance of this issue, but neither party addresses in sufficient depth the disparate authority surrounding it.

    The Court therefore will grant each party leave to submit a supplemental brief explaining to the Court the date when Defendants began to violate the COBRA notice requirement.  Fama's employment terminated in September 2008.  By error, she had

insurance coverage until March 2009 when Defendants terminated the coverage, retroactively effective January 1, 2009. The coverage later was reinstated retroactively to January 1, 2009. Fama received her COBRA notice on September 3, 2009. Based on that series of events and the applicable law, the Court welcomes any further argument or clarification the parties may proffer. Fama shall have twenty (20) days from the date of this Opinion to submit her supplemental brief. Defendants shall have ten (10) days after Fama's submission to file their own brief.

Fama also requests reimbursement for her medical expenses and an award of attorney's fees and costs. The Court will refrain from addressing those issues until after receipt of the parties' supplemental briefs. The parties, if they so choose, may expound on those issues in their supplemental briefs as well, but need not repeat their earlier submissions.

For the reasons set forth above, the Court will grant in part Fama's Motion for Summary Judgment, entitling her to the imposition of a statutory penalty against Defendants. The Court, in turn, will deny in part Defendants' Cross-motion for Summary Judgment. The parties may submit supplemental briefs in accordance with the instructions herein. The Court reserves its judgment on the remaining issues in this case.

## IV. CONCLUSION

For the foregoing reasons, Fama's Motion for Summary

Judgment is granted in part.  Further, Defendants' Cross-motion for Summary Judgment is denied in part.  The parties may submit supplemental briefs in accordance with the instructions articulated in this Opinion.  An Order consistent with this Opinion will be entered.


Dated: September 30, 2011            /s/ NOEL L. HILLMAN
At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.