UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SARAH FAMA, :<br>             :<br>     Plaintiff, :<br>             :<br>     v.          :<br>             :<br>DESIGN ASSISTANCE CORPORATION, :<br>et al.,       :<br>             :<br>     Defendants. :<br>             : | Civil Action No.<br>10-cv-2057 (NLH/KMW)<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

**HILLMAN, District Judge**

  The Court, having granted in part Plaintiff's motion for summary judgment in its Opinion dated September 30, 2011; and

  The Court, in its Opinion, determining that statutory damages of ten dollars ($10) per day should be assessed for a violation of COBRA notice requirements, as per 29 U.S.C. § 1132(c)(1); and

  The Court, in its Opinion, granting each party leave to submit a supplemental brief explaining when Defendants began to violate the COBRA notice requirements in order to address the time frame of the violation and the total statutory damages; and

  The parties having provided such information to the Court; and

  The Court, having considered those submissions, has determined that Defendants began to violate the COBRA notice

requirement on November 12, 2008, forty-four (44) days after the qualifying event of Plaintiff's termination on September 30, 2008; and

The Court finding that under COBRA, 29 U.S.C. § 1161 et seq., notice of healthcare continuation coverage must be given to covered employees within a specified time period following the occurrence of a "qualifying event."  See 29 U.S.C. § 1166. Qualifying events, as defined in 29 U.S.C. § 1163, are the triggers for this notice requirement.  The relevant statutory text defines a "qualifying event" as follows:

> For purposes of this part, the term 'qualifying event' means, with respect to any covered employee, any of the following events which, but for the continuation coverage required under this part, would result in the loss of coverage of a qualified beneficiary:
> (1) The death of the covered employee.
> (2) The termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment.
> (3) The divorce or legal separation of the covered employee from the employee's spouse.
> (4) The covered employee becoming entitled to benefits under title XVIII of the Social Security Act.
> (5) A dependent child ceasing to be a dependent child under the generally applicable requirements of the plan.
> (6) A proceeding in a case under Title 11, commencing on or after July 1, 1986, with respect to the employer from whose employment the covered employee retired at any time.

29 U.S.C. § 1163.  In order to therefore be deemed a "qualifying

event," the plain language of the statute requires: (1) that the event fall into one of the six categories as described above, and (2) that the event, were it not for continuation coverage, would result in the loss of coverage. To "lose coverage," in turn, is defined as "to cease to be covered under the same terms and conditions as in effect immediately before the qualifying event." 26 C.F.R. § 54.4980B-4(c).

"[F]or purposes of [satisfying the definition of a qualifying event], a loss of coverage need not occur immediately after the event, so long as the loss of coverage will occur before the end of the maximum coverage period[.]" 26 C.F.R. § 54.4980B-4(c). Therefore, the statute contemplates a scenario where the loss of coverage is temporally displaced from the qualifying event, so long as the loss of coverage occurs at some point within the 18-month COBRA coverage period. See 26 C.F.R. § 54.4980B-7(e)(ii)(c) ("In the case of a qualifying event that is a termination of employment ... the maximum coverage period ends 18 months after the qualifying event[.]"). "[I]f neither the covered employee nor the spouse or a dependent child of the covered employee loses coverage before the end of what would be the maximum coverage period, the event does not satisfy [the definition of a qualifying event]." Id. The regulations therefore make clear that, in order to constitute a qualifying event, the covered employee must lose coverage at some point

3

within the maximum coverage period.

Several examples pertinent to the case at bar are set forth in the Code of Federal Regulations, the administrative code that interprets the statutory scheme. "The end of the maximum coverage period is measured from the date of the qualifying event even if the qualifying event does not result in a loss of coverage under the plan until a later date." 26 C.F.R. § 54.4980B-7(e)(A-4)(b)(1). This concept is illustrated in the following example:

> Example 1. (I) An employee who is covered by a group health plan terminates employment (other than by reason of the employee's gross misconduct) and, beginning with the day after the last day of employment, is given 3 months of employer-paid coverage under the same terms and conditions as before that date. At the end of the three months, the coverage terminates. (ii) **The loss of coverage at the end of the three months results from the termination of employment and, thus, the termination of employment is a qualifying event.**

26 C.F.R. § 54.4980B-4(g) (emphasis added). In the preceding example, the employee's coverage continues past the date of termination, but ceases three months into the eighteen-month maximum coverage period. However, it is the termination of the employee, and not the loss of coverage after three months, which constitutes the qualifying event; and

The Court finding that the statute, the regulations, and the preceding example compel the conclusion that, in order to

4

constitute a qualifying event, coverage must be lost either at the time of the qualifying event, or at some point within the eighteen-month maximum coverage period.  The loss of coverage need not occur concurrently with the termination, so long as it occurs within the maximum coverage period.  This conclusion is fully consistent with the caselaw interpreting the definition of a qualifying event and the tolling of COBRA notice requirements.  See, e.g., Rosecrance Health Network v. Nationwide Life Ins. Co., No. 07-1140, 2009 WL 799076, *10 (S.D. Ohio Mar. 23, 2009) (ruling that a reduction in hours that did not result in a loss of coverage was not a qualifying event, and that COBRA notice began to toll from the date of plaintiff's discharge, when he lost coverage); Karp v. Guardian Life Ins. Co. of America, 456 F. Supp. 2d 1375, 1381 (S.D. Ga. 2006) (ruling that no qualifying event occurred because defendant provided plaintiff with the same medical coverage past the maximum coverage period without interruption);  Williams v. Teamsters Local Union No. 727, No. 03-2122, 2003 WL 22424726, *4-5 (N.D. Ill. Oct. 23, 2003) (ruling that plaintiff's termination did not constitute a qualifying event because he continued to receive coverage for over four years after his termination, well past the eighteen month COBRA period); Ashcraft v. Shenango Furnace Co., 56 F. Supp. 2d 895, 904 (N.D. Ohio 1999) (holding that plaintiff's retirement did not constitute a qualifying event because he continued to receive

coverage for at least ten years after retirement, well past the eighteen month COBRA period); Fenner v. Favorite Brands Intern., Inc., No. 97-5906, 1998 WL 249232, *5 (N.D. Ill. May 12, 1998) (dismissing without prejudice plaintiff's COBRA notice violation claim because she failed to allege a loss of coverage within the maximum coverage period); Collins v. Strategic Health Care Management Services, Inc., No. 91-7469, 1992 WL 92099, *5 (N.D. Ill. Apr. 28, 1992) (holding that plaintiff's termination constituted a qualifying event where coverage was continued after termination, but was cancelled before the end of the eighteen month COBRA period); Chacosky v. Hay Group, No. 89-8083, 1991 WL 12170, *9 (E.D. Pa. Feb. 1, 1991) (holding that, because defendant provided coverage through the maximum coverage period, plaintiff did not suffer a loss of coverage, thus plaintiff's termination was not a qualifying event).

Applying the above principles to the case at bar, Plaintiff's termination constitutes the qualifying event. Defendants mistakenly provided continuation coverage at no charge from the date of Plaintiff's termination, September 30, 2008, until sometime in March, 2009 - a span of five months, at most. As the Court determined in its earlier Opinion, Plaintiff's coverage was terminated by Defendants in March 2009, retroactively effective January 1, 2009.  (Opinion [Doc. No. 39] 8, September 30, 2011.)  This resulted in a lapse in Plaintiff's

coverage for a period of time, despite the fact that, at some later point, Defendants reinstated Plaintiff's coverage retroactive to January 1, 2009.  The Court therefore finds that Plaintiff lost coverage before the eighteen-month COBRA period expired.  Just as Example 1 of 26 C.F.R. § 54.4980B-4(g) indicates, Plaintiff's loss of coverage approximately five months after her termination of employment was a result of Plaintiff's termination itself; thus, the termination of employment is the qualifying event.

The COBRA notice requirement was triggered by the qualifying event of termination on September 30, 2008.  Defendants had a forty-four (44) day window from that date in which to notify Plaintiff.  See 26 C.F.R. § 2590.606-4(b)(2) (explaining that, where an employer is also the administrator of the group health plan, it must furnish notice to a beneficiary no later than 44 days after the qualifying event).  That 44-day window concluded on November 13, 2008.  As such, Defendants were in violation of the COBRA notice requirement as of November 14, 2008.  It is that date which is used as the starting point to calculate statutory damages of ten dollars ($10) per day.  Plaintiff received COBRA continuation notice on September 3, 2009.  Therefore, the relevant time period for statutory damages, from November 14, 2008 to September 3, 2009, encompasses 293 days.  Total statutory

damages are therefore $2,930;[1] and

    The Court, in its Opinion dated September 30, 2011, having withheld judgment on the matter of medical expenses and attorney's fees until the above dispute was resolved, now determines that neither shall be awarded in this case; and

    The Court finding that it may, in its discretion, award unreimbursed medical expenses incurred due to a COBRA notice violation. See 29 U.S.C. § 1132(c)(1) ("the court may in its discretion order such other relief as it deems proper" in cases where a plan administrator violates the COBRA notice requirements under 29 U.S.C. § 1166(a)(4)); Emilien v. Stull Technologies Corp., 70 F. App'x 635, 637 (3d Cir. 2003) (holding that unreimbursed medical expenses after a COBRA violation may be properly recoverable as damages). The rationale for awarding such medical expenses is concordant with one purpose of ERISA's civil enforcement provision: "to put the Plaintiff in the same position as she would have been absent a violation." Lloynd v. Hanover Foods Corp., 72 F. Supp. 2d 469, 479 (D. Del. 1999). See also Phillips v. Riverside, Inc., 796 F. Supp. 403, 411 (E.D. Ark. 1992) (awarding medical expenses, reasoning that an employer who violated COBRA notice provisions is liable to provide plaintiff with the same health insurance benefits plaintiff would

---

1. Ten dollars ($10) per day multiplied by 293 days ($10 x 293) equals $2,930.

have had if he elected continuation coverage under COBRA).

There exists a crucial difference, however, between the above-cited cases in which medical expenses were awarded, and the case at bar.  In the instant matter, though Plaintiff did suffer an actual lapse in coverage at a certain point, Defendant retroactively reinstated Plaintiff's identical medical benefits so as to cover the lapsed timeframe.  Despite the lapse, Plaintiff was afforded equivalent benefits to cover any medical expenses incurred during such period.  Plaintiff could have, but failed to, resubmit to her insurer the $656.22 worth of unreimbursed medical expenses allegedly incurred during the lapsed period.  The Court finds that Plaintiff could have taken the affirmative step of pursuing reimbursement through her insurer, rather than seek redress through the Court as a first resort.[2]  As such, Plaintiff is denied the award of medical expenses. Cf. Holford v. Exhibit Design Consultants, 218 F. Supp. 2d 901, 907 (W.D. Mich. 2002) (holding that a plaintiff's rejection of defendant's offer of retroactive coverage constitutes a failure to mitigate damages, making plaintiff ineligible to recover medical expenses as actual damages); Hamilton v. Mecca Inc., 930 F. Supp. 1540, 1555 (S.D. Ga. 1996)

---

2.  Indeed, Defendants imply in their brief that Plaintiff may still seek reimbursement from the insurer as well as seek to recoup payments made to a third party provider who was later paid by the insurer.

(ruling that a plaintiff in a COBRA case has a duty to mitigate damages provided that the damages can be avoided without undue risk, burden, or humiliation); and

Plaintiff having also sought an award of attorney's fees, which the Court has discretionary power to award. 29 U.S.C. § 1332(g)(1). See, e.g., Sluka v. Landau Uniforms, Inc., 383 F. Supp. 2d 649, 659 (D.N.J. 2005) (stating that "[a] prevailing party on a [COBRA] claim for statutory penalties also may be awarded 'a reasonable attorney's fee and costs of action' as provided by 29 U.S.C. § 1332(g)(1)"). To assist courts in their determinations, the Third Circuit clarified its five-factor analysis in McPherson v. Employees' Pension Plan of American Re-Insurance Company, Inc., 33 F.3d 253, 254 (3d Cir. 1994) (citing Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983)). This analysis instructs courts to examine: (1) the offending parties' culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorneys' fees; (3) the deterrent effect of an award of attorneys' fees against the offending party; (4) the benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' position. McPherson, 33 F.3d at 254 (hereafter referred to as "the five Ursic factors"). The Court will therefore "articulate its analysis and conclusions as it considers each of the five Ursic factors." Id. (citing Anthuis v. Colt Indus.

10

Operating Corp., 971 F.2d 999, 1012 (3d Cir. 1992)).

Addressing the first Ursic factor, the McPherson court cautioned that district courts should not conflate the concepts of "bad faith" and "culpability."  Whereas "bad faith normally connotes an ulterior motive or sinister purpose[,] [a] losing party may be culpable without having acted with an ulterior motive."  Id. at 256 (internal citations omitted).  The first Ursic factor could therefore militate towards an award of attorney's fees even where there has been no showing of bad faith, as courts should not to give short shrift to the "culpability" aspect.  On the other hand, though, "a party is not culpable merely because it has taken a position that did not prevail in litigation."  Id. at 257.

The Court having determined in its earlier Opinion that Defendants did violate the COBRA notice requirement, there is necessarily some element of culpability borne by Defendants.  (Opinion [Doc. No. 39] 12, Sept. 30, 2011.)  Defendants failed to provide continuation coverage notice when such notice was required.  However, Defendants' culpability is tempered by the fact that Defendants sought to correct this error after becoming aware of the lapse in coverage.  To that end, Defendants reinstated Plaintiff's medical benefits retroactively to cover the time period during which the lapse occurred.  (Daroshefski Cert. [Doc. No. 27-7] ¶¶ 8-9.)  Moreover, Defendants did so at no

11

expense to Plaintiff, effectively paying for Plaintiff's continuation coverage. (Daroshefski Cert. [Doc. No. 27-7] ¶ 10.) This demonstrates not only an attempt to minimize or mitigate culpability and correct this error, but also bespeaks a lack of bad faith on Defendants' part. The Court earlier found that mere ignorance or misunderstanding of the COBRA requirements, and not a sinister or ulterior motive, was the likelier reason for Defendants' failure to provide Plaintiff with timely notice. (Opinion [Doc. No. 39] 11, Sept. 30, 2011.) In sum, while some level of culpability exists, Defendants attempted to minimize the adverse effects of the error by reinstating coverage at no charge to Plaintiff. Moreover, there has not been an adequate showing of bad faith on behalf of Defendants. As such, the first <u>Ursic</u> factor militates against awarding attorney's fees.

The second <u>Ursic</u> factor instructs the Court to examine the ability of the offending party to satisfy an award of attorney's fees. Plaintiff suggests that Defendants' failure to provide financial information bespeaks Defendants' ability to pay attorney's fees. Defendants, on the other hand, aver that they are unable to do so for three reasons: (1) Defendants are a small company that has suffered in the economic downturn, (2) Defendants have already borne the entire burden of costs for Plaintiff's continuation coverage, (3) Defendants have been forced to pay their own attorney to defend this action. (Woerner

12

Cert. [Doc. No. 27-6] ¶¶ 12-14.)  Defendants claim that these factors, taken together, have already constituted a significant expense and hardship, and render Defendants unable to satisfy an award of attorney's fees.  However, as no financial records have been provided to the Court by either party, it is unclear whether Defendants are actually capable of paying for an award of attorney's fees.  Rather than speculate regarding the financial health of a small business, the Court finds this factor unilluminating; the Court therefore affords it little weight. See, e.g., Hardt v. Reliance Standard Life Insurance Co., 130 S. Ct. 2149, 2158 (2010) ("Because these five factors bear no obvious relation to § 1132(g)(1)'s text or to our fee-shifting jurisprudence, they are not required for channeling a court's discretion when awarding fees under this section"); Trucking Employees of North Jersey Welfare Fund, Inc. v. Brockway Fast Motor Freight Co., 130 F.R.D. 314, 315 (D.N.J. 1989) (advising that not all five Ursic factors need be considered nor afforded equal weight).

    The third Ursic factor considers "whether it would serve the objectives of ERISA to award counsel fees in an effort to deter conduct of the kind in which the [non-moving party] engaged." McPherson, 33 F.3d at 258.  The conduct in question need not be exclusively based on bad faith; ERISA objectives are futhered even when "fee awards are employed to deter behavior that falls

13

short of bad faith conduct." Id. at 258. While imposing a fee award in this case may serve some deterrent purpose, it would only marginally do so. It appears from the record that this is the first time that Defendants have committed a COBRA notice violation. (Woerner Cert. [Doc. No. 27-7] ¶ 8.) Defendants do not appear to be repeat or habitual offenders. Moreover, as the Court found earlier, the violation was likelier due to mere ignorance or misunderstanding of the COBRA requirements, and not a willfully malicious or ill-intentioned decision.[3] Any ignorance or misapprehension of the law which led to the violation, in turn, has necessarily been remedied through the clarifying and instructive effect of this litigation. As such, the Court finds that an award of attorney's fees will only have a marginal effect, at best, in deterring such conduct in the future.

    The fourth Ursic factor examines the benefit conferred on members of the pension plan as a whole. Plaintiff and Defendants agree that there is no direct benefit conferred on other plan

---

3. Defendant's controller, Kelly Daroshefski, had no prior experience dealing with employees who needed COBRA benefits since she had only recently assumed that position. (Woerner Cert. [Doc. No. 27-7] ¶ 8.) She labored under the misunderstanding that Cherry Hill Benefits was Defendants' plan "administrator." (Daroshefski Cert. [Doc. No. 27-7] ¶ 2.) This belief was based on the fact that all questions or problems associated with claims or coverage were handled through Cherry Hill Benefits, including additions and terminations. (Daroshefski Cert. [Doc. No. 27-7] ¶ 2.)

14

members.  Plaintiff, however, suggests that some indirect benefit to other plan members exists because Defendants are now better-informed as to COBRA notice requirements, therefore less likely to err in the future.  "This concern is more properly directed at the third Ursic factor (deterrence) than at the fourth factor."  Shah v. Broadspire Services, Inc., No. 06-3106, 2007 WL 3124707, *2 (D.N.J. Oct. 23, 2007).  Since the benefit from this case will affect exclusively Plaintiff, and will not confer benefits on other plan members, this factor "is of neutral impact."  Werbler v. Horizon Blue Cross Blue Shield of New Jersey, No. 05-3528, 2006 WL 3511181, *5 (D.N.J. Dec. 5, 2006).

The fifth and final Ursic factor analyzes the relative merits of the parties' positions.  "The fact that the [losing party's] position has not been sustained, does not alone put the fifth factor in the column favoring an award."  McPherson, 33 F.3d at 258.  "Only where there is a 'complete lack of evidence' or where a clearly untenable position has been taken will claims be deemed to be so lacking in relative merit that the fifth Ursic factor is satisfied."  Shah, 2007 WL 3124707, at *3 (quoting McPherson, 33 F.3d at 258).  While a statutory violation did occur, Defendants reinstated Plaintiff's coverage at no charge, so as to cover any expenses incurred in the period where coverage lapsed.  Moreover, Defendants have provided ample evidence to show that the statutory violation was the result of a

15

misunderstanding.  Defendants sought to, and did correct, this error once so apprised.  As such, the Court cannot say that there is a "complete lack of evidence" supporting Defendants' position, nor have Defendants adopted a "clearly untenable position."  Id. Plaintiff, though she suffered a brief lapse in coverage, received substantial recompense through the no-cost, retroactive application of her medical coverage by Defendants; this cost would normally be borne by Plaintiff had she elected continuation coverage in the absence of a statutory violation.  Any harm resulting from the brief lapse in coverage is countervailed by the free, retroactive coverage afforded Plaintiff by Defendants. Therefore, the relative merits of the parties' positions do not weigh in favor of an award of attorney's fees.

On balance, the first, third, fourth, and fifth Ursic factors disfavor an award of attorney's fees, while the second factor is of neutral impact.  Adjudging the weight of the Ursic factors,[4] the Court determines that an award of attorney's fees is not warranted in this case.

Accordingly,

IT IS on this ___20th___ day of ___April___, 2012, hereby,

**ORDERED** that Plaintiff shall be **AWARDED** statutory damages in

---

4.  Even if the Court were to apply a presumption of an ability to pay based on Defendants' failure to provide full financial disclosure, the Court would still exercise its discretion to deny attorney's fees as the other factors counsel against such an award.

the amount of $2,930 against Defendant; and it is further

**ORDERED** that Plaintiff's requests for medical expenses and attorney's fees are **DENIED**.


At Camden, New Jersey
      /s/ Noel L. Hillman
HON. NOEL L. HILLMAN, U.S.D.J.